FILED
CLERK
**8/14/2025**

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
SANDY BOSMAN,

                            *Plaintiff*,

                                                    **MEMORANDUM**
                                                    **AND ORDER**

                                                    24-CV-05124 (JMW)


              -against-


DENIS R. MCDONOUGH, *Secretary of the*
*Dept. of Veterans Affairs*, and MERIT SYSTEM
PROTECTION BOARD (NY),

                            *Defendants*.

-------------------------------------------------------------X
**A P P E A R A N C E S:**

              Sandy Bosman
              2719 44th Drive, Apt. #5A
              Long Island City, NY 11101
              *Plaintiff Appearing Pro Se*

              Diane C. Leonardo
              **United States Attorney's Office**
              610 Federal Plaza
              Central Islip, NY 11722
              *Attorney for Defendants*


**WICKS,** Magistrate Judge:

       Pro se Plaintiff Sandy Bosman ("Plaintiff") commenced this action on June 4, 2024,

against Denis R. McDonough—Secretary of the Department of Veterans Affairs ("VA")—and

the Merit System Protection Board ("MSPB") (collectively, "Defendants") asserting claims for:

(1) employment discrimination under Title VII; (2) intentional employment discrimination on the

basis of race pursuant to 42 U.S.C. § 1981; (3) employment discrimination pursuant to the New

York State Human Rights Law ("NYSHRL") and New York City Human Rights Law

1

("NYCHRL"); and (4) defamation of character, slander, and employment harassment. (ECF No. 1 at pp. 3-4.) Before the Court[1] is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 29.)

For the following reasons, Defendants' motion (ECF No. 29) is **GRANTED**.

## BACKGROUND

Plaintiff is a former nursing assistant at the VA's Medical Center in Northport, New York. (*See* ECF No. 1 at p. 3.) She asserts that Defendants engaged in racially discriminatory actions towards employees of color, like herself. (*See id.*) Specifically, Plaintiff notes that Defendants allegedly terminated her employment, retaliated against her, harassed her, created a hostile work environment, and defamed her character through false accusations. (*Id.* at p. 5.) As such, Plaintiff requests that Defendants re-hire her and seeks money damages on grounds that she no longer receives medical or health benefits, she cannot sleep at night, and she is unable to maintain another job. (*Id.* at p. 6.)

Plaintiff, through her Complaint, demonstrates how her case is presently before the Court. On August 10, 2023, the VA issued a decision to remove Plaintiff effective August 20, 2023. (*See id.* at Ex. A, p. 1.) Plaintiff then appealed her removal to the MSPB on November 13, 2023. (*See id.*) On April 16, 2024, the MSPB rejected Plaintiff's case without reaching a decision on the merits of any of her claims due to her significant delay in filing her appeal. (*See id.* at p. 2.) Plaintiff should have filed with the MSPB within 30 days of her termination (September 19, 2023), yet Plaintiff instead filed her appeal on November 13, 2025, fifty-five days late. (*Id.*) Moreover, Plaintiff failed to show good cause justifying the delay. (*Id.*) As such, the MSPB appeal was dismissed with an effective date of April 16, 2024. (*See* ECF No. 31-3, Ex. C at p. 5.)

---

[1] The parties consented to the jurisdiction of the undersigned for all purposes on September 29, 2024. (ECF Nos. 23, 25 (so-ordered consent form)).

Plaintiff appealed this final decision by the MSPB to the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1, Ex. A at p. 2.)[2] The EEOC also denied Plaintiff's case for lack of jurisdiction over the appeal pursuant to applicable EEOC regulations because the MSPB dismissed Plaintiff's appeal as untimely and thus did not address the merits of any employment discrimination claims. (*Id.* (EEOC noting that the MSPB's decision "did not address any matters within the Commission's jurisdiction")).

Subsequently, Plaintiff received a "Notice of Right to Sue" from the EEOC on May 6, 2024, advising Plaintiff that she had "the right to file a civil action in an appropriate United States District Court, based on the decision of the [MSPB], within thirty (30) calendar days of the date that you receive this decision." (*Id.* at p. 3.) Plaintiff commenced the underlying lawsuit[3] on June 4, 2024, it appears in response to the EEOC's denial of Plaintiff's MSPB claim. (*See* ECF No. 1 at p. 5 ("MSPB deny [sic] my case and I appealed the MSPB [sic] with the EEOC and they deny my appeal and am pursuing this process to the last result.")). Despite being advised by the EEOC of her right to request counsel (*see* ECF No. 1, Ex. A at p. 3), Plaintiff is appearing in this action pro se.

Following an Initial Conference before the undersigned on September 9, 2024, Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF Nos. 29-31) and Plaintiff's opposition (ECF No. 32) on January 23, 2025. No reply was submitted. (*See* ECF No. 33 at p. 1.)

---

[2] For the sake of clarity in pagination, the Court refers to the EEOC decision within Plaintiff's Complaint as "Ex. A" and notes the page numbers of the EEOC decision accordingly.

[3] Plaintiff brough this action initially in the United States District Court for the Southern District of New York but, pursuant to the parties' stipulation, the matter was transferred to this Court. (ECF Nos. 14, 15.)

On March 11, 2025, Plaintiff submitted a letter[4] "formally object[ing] to the recent Dismissal ruling in [her] case." (ECF No. 35 at p. 1.) Since the case had not been dismissed at that stage, the Court held a status conference on March 21, 2025, at which the Court explained to Plaintiff that only a motion to dismiss was pending and the case had not been dismissed. (ECF No. 37.)  Plaintiff was also afforded the additional opportunity to present any further information, documents, evidence or arguments in opposition to the pending motion, but none was filed. (*Id.*)

## DISCUSSION

**A.** ***Failure to Exhaust Administrative Remedies***

Though Defendants argue that Plaintiff did not exhaust her administrative remedies as she was obligated to do (ECF No. 30 at p. 14), Plaintiff does not address that argument. (*See generally* ECF No. 32.)

"[C]ourts construe motions to dismiss for failure to exhaust administrative remedies as Rule 12(b)(6) motions for failure to state a claim, rather than Rule 12(b)(1) motions for lack of subject matter jurisdiction." *D'Amato v. Soc. Sec. Admin.*, No. 21-CV-5778 (DG) (ST), 2024 WL 4648145, at *4 (E.D.N.Y. Aug. 29, 2024), *report and recommendation adopted*, 2024 WL 4648140 (E.D.N.Y. Sept. 20, 2024); *see Bolt v. Planned Parenthood of Cent. & W. New York*, 763 F. Supp. 3d 463, 470 n.1 (W.D.N.Y. 2025) (analyzing an exhaustion of administrative remedies argument under Rule 12(b)(6) because "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court rather than a jurisdictional requirement") (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)). "[C]ourts in this Circuit routinely dismiss complaints at the Rule 12(b)(6) stage for failure to

---

[4] Pro se Plaintiff emailed this letter to the undersigned's Chambers on March 13, 2025. The undersigned docketed the letter on ECF the same day. (ECF No. 35.)

exhaust administrative remedies under the CSRA and Title VII—including claims brought by federal employees proceeding pro se—where such failure is clear from the face of the complaint." *Wilder v. Shulkin*, No. 14-CV-10072 (RJS), 2017 WL 2889507, at *5 (S.D.N.Y. June 30, 2017).

Employees alleging adverse action based on discrimination under the Civil Service Reform Act ("CSRA") may either bring a mixed complaint through the EEOC or bring a mixed appeal before the MSPB. *Downey v. Runyon*, 160 F.3d 139, 142 (2d Cir. 1998). "A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race; color . . . .". 29 C.F.R. § 1614.302(a)(1). "An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB . . . but not both." 29 C.F.R. § 1614.302(b); *see also Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989) ("EEOC regulations governing equal employment in the federal government . . . provide that a claim of discrimination or reprisal may be pursued either before an equal opportunity agency created by the employing agency ('agency EEO') or before MSPB, but not before both simultaneously."). "The claimant is deemed to have elected to proceed in whichever administrative forum he has filed first." *Brady*, 869 F.2d at 62 (citing 29 C.F.R. § 1613.403).

"Administrative exhaustion is an 'essential element' of Title VII's statutory scheme and 'a precondition to bringing such claims in federal court.'" *Bolt*, 763 F. Supp. 3d at 470 (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)); *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) ("'As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative

remedies and file a timely complaint with the EEOC.'") (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)).

For example, in *Downey v. Runyon*, the Second Circuit answered in the affirmative the question of "whether a federal employee is entitled to a de novo judicial review in federal district court of his discrimination claim after the MSPB, without reaching the merits of the discrimination claim," dismissed the employee's appeal on untimeliness grounds and the EEOC found no jurisdiction for the employee's appeal. 160 F.3d at 143 (concluding that a federal employee may seek de novo judicial review in federal district court of a discrimination claim after the MSPB did not address the merits of the claim but rather dismissed it on untimeliness grounds). The court further noted that proper statutory construction directs that when the MSPB issues an adverse "final decision" or "final order" concerning a matter of discrimination, the "case of discrimination shall be filed in district court". *Id.* at 145 (citations omitted). However, though the federal employee may seek de novo review of the claim, the employee is "not necessarily entitled ultimately to a determination of the merits of his claim". *Id.* The court added that "[p]rior to bringing suit under the Rehabilitation Act and Title VII, [plaintiff] was obliged to exhaust the administrative remedies at his disposal," and that "[t]he exhaustion doctrine is equally applicable to suits filed under Title VII through the provisions of the CSRA." *Id.* at 145. As such, the "court should of course consider the effect of [Plaintiff's] alleged failure to follow regulatory procedures." *Id.* at 146.

Here, Plaintiff failed to exhaust her administrative remedies. To meet the standard for administrative exhaustion, a plaintiff must timely file with the relevant agency. *See Harrison v. Potter*, 323 F. Supp. 2d 593, 600 (S.D.N.Y. 2004) ("[F]or a Title VII complainant to bring an action in federal court, she 'must exhaust available administrative remedies in a timely

6

fashion.'") (quoting *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996)); *see also*

*Mazurkiewicz v. New York City Health & Hosps. Corp.*, 585 F. Supp. 2d 491, 497 (S.D.N.Y.

2008), *aff'd*, 356 Fed. App'x 521 (2d Cir. 2009) (finding that a Title VII pro se plaintiff who

failed to timely file her complaint with the EEOC did not exhaust her administrative remedies

and dismissing the claim on that basis); *see also Wilder v. United States Dep't of Veterans Affs.*,

175 F. Supp. 3d 82, 88 (S.D.N.Y. 2016) (quoting *Lucenti v. Potter*, 432 F. Supp. 2d 347, 356

(S.D.N.Y. 2006)) ("Timely exhaustion of administrative remedies requires that a federal

employee comply with applicable EEOC regulations.") (quoting *Lucenti v. Potter*, 432 F. Supp.

2d 347, 356 (S.D.N.Y. 2006)).

Indeed, Plaintiff did not timely file her complaint with the MSPB, as the MSPB requires

an aggrieved party to file within thirty days of the adverse action (*see* 5 C.F.R. § 1201.22(b)),

which occurred on August 20, 2023. (*See* ECF No. 1, Ex. A at p. 2.) This gave Plaintiff a

deadline of September 19, 2023 to file, but Plaintiff filed fifty-five days late, on November 13,

2023. (*Id.*) Upon the MSPB's dismissal for untimeliness, Plaintiff filed an appeal with the EEOC

requesting the MSPB's decision be reversed and contending that she "did not receive

unemployment benefits in a timely manner and was unable to retain the services of an attorney."

(*Id.*) The EEOC denied Plaintiff's petition, noting that the MSPB's decision based on procedural

grounds was not within the EEOC's jurisdiction to review, but informing Plaintiff of her right to

file an action in a federal court. (*Id.* at pp. 2-3.) As such, Plaintiff's failure to timely file with the

MSPB is apparent on the face of the Complaint and demonstrates that she did not exhaust her

administrative remedies as she was required to do under Title VII. *See Shulkin*, 2017 WL

2889507, at *5 (noting that courts "routinely dismiss" for untimely filing at the 12(b)(6) stage

even in cases with pro se plaintiffs.)

       i.    <u>Equitable Tolling</u>

Timely filing is not a "jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982). "[E]quitable tolling is only appropriate in [ ] rare and exceptional circumstance[s], in which a party is "prevented in some extraordinary way from exercising his rights[.]" *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations and internal quotation marks omitted). Defendants contend that although courts may equitably toll, Plaintiff has not given sufficient reason for the Court to apply equitable tolling. (*See* ECF No. 30 at p. 8.) Plaintiff does not address Defendants' arguments against tolling in her Opposition. (*See generally* ECF No. 32.)

Here, though the MSPB afforded Plaintiff the opportunity to show good cause for her untimely filing, she failed to do so. (*See* ECF No. 1, Ex. A at p. 2.) After the MSPB raised the timeliness issue in a status conference on January 5, 2024, the MSPB Administrative Judge ("AJ") issued a Timeliness Order on February 15, 2025, explaining the thirty-day deadline for appeals. (*Id.* at pp. 1-2.) The AJ also ordered Plaintiff to show good cause for the delay, but Plaintiff never responded. (*Id.* at p. 2.) After this, the AJ issued an Initial Decision on March 12, 2024, indicating that the deadline had passed and Plaintiff had not shown good cause for delay, and the AJ dismissed the appeal without a hearing for these reasons.[5] (*Id.*) Similarly, in her Opposition to the present motion to dismiss, Plaintiff failed to show any reason at all for this failure, let alone raise the sorts of exceptional, rare, or extraordinary circumstances that would

---

[5] The Initial Decision was finalized on April 16, 2024. (ECF No. 1, Ex. A at p. 2 n.1.) Plaintiff filed a document electronically with the MSPB the day after the Initial Decision was filed, but it was unclear whether this was meant to be a petition for review. (*See id.*) Accordingly, she was given an opportunity to appeal by filing a petition for review by April 8, 2024, but there was "no indication [Plaintiff] filed a petition for review." (*See id.*)

require a court to exercise its power to toll. (*See generally* ECF No. 30.) This history indicates that Plaintiff had no less than three opportunities to advance any grounds for her failure to timely file, but Plaintiff neglected to do so.

On this record, there is not even a scintilla of evidence of reasonable diligence, let alone extraordinary circumstances, to explain Plaintiff's failure to timely file. Accordingly, the Court finds equitable tolling inapplicable here. *See Zerilli-Edelglass*, 333 F.3d at 80 (finding no abuse of discretion where district court found equitable tolling inappropriate where plaintiff who was *pro se* at district court level "failed to act diligently when she did not pursue the filing of a formal complaint with the EEOC"); *Perry v. O'Neil*, 212 F. Supp. 2d 99, 108 (E.D.N.Y. 2002) (finding no reason to equitably toll where pro se plaintiff failed to timely file, neglected to advance arguments for equitable tolling, and received notice of the right to seek judicial review); *Wilder*, 175 F. Supp. 3d at 88, 90 (refusing to equitably toll and dismissing pro se plaintiff's complaint on timeliness and failure to exhaust grounds where plaintiff did not allege facts justifying the delay in filing).

Because the Court finds that Plaintiff failed to exhaust her administrative remedies and that equity does not require tolling, Plaintiff's complaint must be dismissed under Rule 12(b)(6).

**B.** *__Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)__*

Defendants maintain that Plaintiff's Complaint should also be dismissed for failure to state a claim under Rule 12(b)(6) because her Complaint contains "vague and conclusory allegations" that "fail to state that any alleged adverse actions occurred because of Plaintiff's protected class or in retaliation for Plaintiff's participation in a protected activity." (ECF No. 30 at p. 19.)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to mere legal conclusions, and a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (citation omitted).

The standards apply equally to *pro se* complaints, but in a less rigid manner. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally

construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes & citations omitted). When considering a *pro se* complaint, the Court must interpret the pleading to raise the strongest claim plausibly suggested by the allegations. *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 RRM LB, 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted) ("The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest.") "However, mere conclusions of law or unwarranted deductions need not be accepted." *Id.* (internal quotation marks omitted.) Notably, with *pro se* complaints, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and district courts 'cannot invent factual allegations' that the plaintiff has not pleaded." *Vidurek v. Pollen*, No. 20-CV-6714 (CS), 2021 WL 4066503, at *7 (S.D.N.Y. Sept. 7, 2021) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

Because Plaintiff is proceeding *pro se*, this Court is not restricted to analyzing just the factual allegations within the four corners of the Complaint. Rather, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in [her] papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Arroyo-Home v. City of New York*, No. 16-CV-3857 (MKB), 2019 WL 3428577, at *1 n.1 (E.D.N.Y. July 30, 2019) ("Because Plaintiff is proceeding *pro se*, the Court also considers and assumes the truth of the factual allegations in Plaintiff's papers filed in opposition to Defendant's motion."); *see Palmer v. Shchegol*, 406 F. Supp. 3d 224, 228 n.1 (E.D.N.Y. 2016) (collecting cases) (noting "the facts of this case and the sufficiency of Plaintiff's pleadings are determined by reference to both Plaintiff's amended complaint and her opposition to the instant motion").

11

This concept encapsulates the "mandate that 'the submissions of a pro se litigant [] be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Elliott v. Nestle Waters N. Am. Inc.*, No. 13 CIV. 6331 RA, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). This expansive approach analysis applies to other *pro se* filings as well. *See Phillips v. Google LLC*, No. 24-CV-5742 (VF), 2025 WL 1795894, at *1, n.2 (S.D.N.Y. June 30, 2025) (citing *Rodriguez v. Rodriguez*, No. 10-CV-891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("When analyzing the sufficiency of a *pro se* pleading, a court may consider factual allegations contained in a *pro se* litigant's opposition papers and other court filings."); *see also Koltun v. Berry*, No. 13 Civ. 1612 (PAC) (JCF), 2016 WL 6601558, at *1, n.3 (S.D.N.Y. Nov. 7, 2016) (considering pro se plaintiff's opposition papers and "additional submissions" made in connection with the motion to dismiss).

Here, Plaintiff asserts several causes of action for: (i) employment discrimination based on race in violation of Title VII of the Civil Rights Act of 1964; (ii) race discrimination under 42 U.S.C. § 1981; (iii) violations of the NYSHRL; (iv) violations of the NYCHRL; (v) defamation of character and slander; and (vi) employment harassment. (*See generally* ECF No. 1.) To support her Title VII claim, Plaintiff notes in her Complaint that "[s]upervisor was racist; prejudice towards African Americans. Employment was biased towards people of color." (*Id.* at p. 4.) Under § 1981, Plaintiff alleges she was intentionally discriminated on the basis of being Haitian and African American. (*Id.* at p. 4.) Generally, and without specification on which cause of action it relates to, Plaintiff avers that "[she] was wrongfully terminated by the Veterans Affairs" and "[she has] been harassed severely by my nurse manager after being wrongfully terminated all my benefits was cut off, no money, no benefits." (*Id.* at pp. 5-6.)

12

In Plaintiff's Opposition,[6] she avers that Shermain Veville, the head nurse during Plaintiff's employment, used to comment on Plaintiff's body, namely asking how she maintains her figure. (*See* ECF No. 32 at p. 1.) Plaintiff further points to sporadic incidents pertaining to her interactions with her former employer such as: (i) enduring hardship when Alexandria Aldana, her boss, changed Plaintiff's hours despite knowing this would negatively impact Plaintiff (*see* ECF No. 32 at p. 2); (ii) being written up by Veville for leaving work early despite knowing that Plaintiff was not leaving (ECF No. 32 at p. 3); (iii) allegedly being followed home by another co-worker on the Sunken Meadow Parkway (ECF No. 32 at pp. 3, 17); and (iv) allegedly being intimidated after cops arrived following Plaintiff supposedly hiding cameras in the bathroom during her shift and cursing at patients. (ECF No. 32 at p. 2.)

Similarly, in her Opposition, Plaintiff makes the following accusations: (i) "[b]eing terminated was wrongful being the hostile work environment created by Mrs. Alexandria Aldana" (ECF No. 32 at p. 4); (ii) "[a]ll [Plaintiff's] coworkers noticed [Aldana] targeted [Plaintiff] the most and there was no exact reasons at all (ECF No. 32 at p. 4); (iii) "Alex Aldana . . . needs to stop targeting [Plaintiff] and do a better job" because Plaintiff "worked hard to get [her] job and now feeling harassed by the supervisor, bullied, and made feel like a failure . . . ." (ECF No. 32 at p. 13); and (iv) she felt "targeted" and that her "job [was] sabotaged." (ECF No. 32 at p. 14.) Further, as part of her Opposition, Plaintiff submitted a letter to a human resources representative in which she stated:

> I expressed to Ms. Judy Ingrassia and Beverly (union representative) that it's a danger for me to work and be supervised under Ms. Aldana because she causes a hostile work environment, targeting and harassing me constantly. Everybody on the unit is staring at me constantly making it very uncomfortable, intimidating, lack of trust work environment. Supervisory watch as per the union is supposed to be a

---

[6] Plaintiff's Opposition is comprised of fourteen pages of either email correspondence screenshots with her former employers and colleagues or copies of letters Plaintiff wrote complaining of the circumstances surrounding her employment. Plaintiff submits no legal argument.

> private matter between myself and Ms. Aldana. In my case everybody on the unit,
> down to the transport is watching my every move. Making this work environment
> very hostile and extremely uncomfortable.

(*Id.* at p. 14.)

The Court proceeds to analyze Plaintiff's causes of action in light of these facts and arguments drawn from Plaintiff's Complaint and Opposition under a liberal reading afforded to pro se litigants. Even when doing so, the Court finds that Plaintiff does not state any plausible claim under Rule 12(b)(6).

i. *Title VII Claim*

"To establish a prima facie claim of employment discrimination based on race under Title VII a plaintiff must show (1) that he or she belonged to a protected class; (2) that he or she was otherwise qualified for the position; (3) that he or she suffered an adverse employment action; and (4) that 'the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'" *Roff v. Low Surgical & Medical Supply, Inc.*, No. CV-03-3655 (SJF) (JMA), 2004 WL 5544995, at *3 (E.D.N.Y. May 11, 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). For an employment discrimination claim based on race under Title VII to survive a motion to dismiss, a plaintiff must allege facts that plausibly suggest that the employer discriminated against her because of her race. *See Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (noting that on a motion to dismiss, a plaintiff need only allege facts suggesting an inference of discriminatory motivation, a "minimal burden").

A plaintiff is a member of a protected class if he or she is "discriminated against because of his [or her] 'race, color, religion, sex or national origin.'" *Cooper v. Allied Barton Sec. Servs.*, No. 08 Civ. 10669 (PGG), 2010 WL 2746333, at *4 (S.D.N.Y. July 9, 2010) (quoting 42 U.S.C.

§ 2000e—2)). Further, an adverse employment action is a "materially adverse change in the terms and conditions of employment" such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). To be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 78 (citing *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). Additionally, "[a] Title VII plaintiff may establish an inference of discriminatory intent in a number of different ways depending on the specific facts of the case. For example, a discriminatory race and/or color motive can be inferred if a plaintiff was treated differently than similarly situated white employees or if the defendants engaged in a pattern of discriminatory treatment of African-American employees." *Russell v. County of Nassau*, 696 F. Supp. 2d 213, 232 (E.D.N.Y. 2010) (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)).

In *Smith v. New York City Health and Hospitals*, the court dismissed pro se plaintiff's claim for a Title VII discrimination for failure to state a claim. No. 25-cv-1040 (PKC) (TAM), 2025 WL 722879, at *2 (E.D.N.Y. Mar. 6, 2025). There, pro se plaintiff alleged in her complaint that she was "subjected to wrongful discrimination, termination, and retaliation based on her race and color." *Id.* at *1. To support these claims, pro se plaintiff described "incidents" with her supervisor involving distribution of tasks, criticisms of work performance, and failures to support plaintiff. *See id.* In granting defendant's 12(b)(6) motion, District Judge Pamela K. Chen found that rather than "identify [plaintiff's] race or color or allege specific instances or facts suggesting that her former employer took adverse action against her because of her race or color," plaintiff

15

merely pointed to ordinary workplace disputes. *Id.* at *2. Plaintiff's allegations, thus, were "insufficient to suggest or support the inference that her former employer discriminated against her in violation of Title VII." *Id.*

Here, though Plaintiff asserts that her supervisors were racist, prejudicial towards African Americans, and biased towards people of color, these general assertions alone are simply insufficient to state a plausible claim under Title VII. Further, Plaintiff's Opposition does not compel a contrary conclusion because, like the pro se plaintiff in *Smith*, Plaintiff cites instances of workplace disputes involving her supervisors but fails to "plead any facts that would show" that such action "was related in any way to [her] race . . . .". *Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 194 (E.D.N.Y. 2016) (dismissing a pro se plaintiff's Title VII claim where the complaint was "entirely devoid of any actions or remarks on or behalf of Defendant that would evidence discrimination"). Accordingly, Plaintiff's Title VII claim is dismissed under Rule 12(b)(6).

  ii.   *NYSHRL*

Moreover, Plaintiff asserts a cause of action for violation of the NYSHRL. (ECF No. 1 at p. 4.) "Under the NYSHRL, it is 'an unlawful discriminatory practice' for an employer, based on an individual's race, color, or sex, 'to discriminate against such individual in compensation or in terms, conditions or privileges of employment.'" *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 117 (S.D.N.Y. 2020) (quoting N.Y. State Exec. Law § 296(1)(a)). Importantly, because NYSHRL claims are subject to the same standard as Title VII claims, courts routinely analyze these causes of action together. *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (noting claims under Title VII and NYSHRL are "analytically identical" and generally "addressed together"); *see also Soloviev v. Goldstein*, 104

F. Supp. 3d 232, 247 (E.D.N.Y. 2015) ("'Because NYSHRL claims are subject to the same standard as Title VII claims, [the Court] will consider them together, except [if] otherwise noted.'") (quoting *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, 13-CV-3038, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015) (alteration in original). It follows, therefore, that because Plaintiff failed to prove any adverse employment action was taken because of her race, her claim for violation of the NYSHRL is also properly dismissed under Rule 12(b)(6). *See Soloviev*, F. Supp. 3d at 249 (dismissing pro se plaintiff's Title VII and NYSHRL claims because he showed no connection between his termination and race).

### iii.    *42 U.S.C. § 1981*

Plaintiff further asserts a cause of action under 42 U.S.C. § 1981 for alleged intentional employment discrimination based on her race. (*See* ECF No. 1 at p. 4.) "To state a claim under Section 1981, 'a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.'"). *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 456 (E.D.N.Y. 2014) (quoting *Gaddy v. Waterfront Comm'n*, No. 13 CIV. 3322 (AT) (HBP), 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014)); *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000)) (same). "Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Fouche*, 64 F. Supp. 3d at 457 (E.D.N.Y. 2014) (quoting *Haggood v. Rubin & Rothman, LLC*, No. 14–CV–34L (SJF) (AKT), 2014 WL 6473527, at *7 (E.D.N.Y. Nov. 17, 2014)); *see also Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)

("[A] plaintiff pursuing a claimed violation of § 1981 . . . must show that the discrimination was intentional.").

Similar to the NYSHRL, "[t]he same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981 as constitute a claim under Title VII." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (quoting *White v. Eastman Kodak Co.*, 368 Fed. App'x. 200, 202 (2d Cir. 2010)); *Ganthier v. N. Shore-Long Island Jewish Health Sys., Inc.*, 345 F. Supp. 2d 271, 282 (E.D.N.Y. 2004) ("[C]laims brought pursuant to Section 1981 are analyzed under the same standards as Title VII claims.") (Spatt, J.)

Plaintiff's sole assertion in her Complaint for her § 1981 claim that she was discriminated against on the basis of being Haitian and African American (ECF No. 1 at p. 4), is insufficient to state a claim. *See DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 68 (E.D.N.Y. 2019) (dismissing pro se plaintiff's § 1981 claim where his "bare allegation of racial discrimination" was that he was discriminated against because he was from Haiti). Similarly, the assertions from Plaintiff's Opposition do not tilt the scale from baseless to plausible. *See Nunez v. Adams*, No. 22-cv-4211 (EK) (MMH), 2024 WL 866170, at *3 (E.D.N.Y. Feb. 29, 2024) (dismissing pro se plaintiff's § 1981 claim because his conclusory allegations did not connect the alleged pattern of discrimination and the allegedly adverse employment action); *Fontaine v. CGI*, No. 22-CV-3857 (LDH) (RML), 2025 WL 1126479, at *3 (E.D.N.Y. Apr. 16, 2025) (determining pro se plaintiff's conclusory allegations that she was mistreated on account of her race insufficient to state a claim under § 1981). As such, Plaintiff's § 1981 claim is dismissed under Rule 12(b)(6).

iv.    *NYCHRL*

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differentially treatment of any degree based on a discriminatory motive." *Gorokhovsky v. New York City Housing Authority*, 552 Fed. App'x 100, 102 (2d Cir. 2014). Indeed, "[t]he NYCHRL uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards." *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 328 (S.D.N.Y. 2020). As such, courts "must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). The NYCHRL, therefore, is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (internal citation omitted). Even under this expansive approach, a pro se plaintiff fails to state a claim under the NYCHRL where she does not carry her burden in showing that the conduct was caused by a discriminatory motive. *See Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 71 (2d Cir. 2016) (affirming dismissal of pro se plaintiff's NYCHRL claim because she failed to allege "that she was fired or harassed 'because of' her protected characteristics, and that she did not plausibly allege any facts that would give rise to such a connection").

Here, because Plaintiff neglects to connect the treatment she received from Veville and Aldana to a discriminatory motive, her NYCHRL claim is dismissed for failure to state a claim. *See Soloviev*, 104 F. Supp. 3d at 250 (dismissing pro se plaintiff's claims under the NYCHRL because of his failure to allege that the adverse employment action was caused by a discriminatory motive by his employers on the basis of his race, gender, or origin); *see also Bell v. McRoberts Protective Agency*, No. 15-CV-0963 (JPO), 2016 WL 1688786, at *4 (S.D.N.Y.

19

Apr. 25, 2016) ("Because [pro se plaintiff] has not identified retaliatory conduct by his former employer or pleaded facts linking his treatment to a protected characteristic, his NYCHRL claims must be dismissed.").

     v.    *Defamation*

Plaintiff also asserts a claim for "defamation of character" and "slander." (*See* ECF No. 1 at p. 4.) At the outset, "'[a] claim for 'defamation' is an umbrella term that incorporates the twin tort of libel and slander. Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.'" *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (quoting *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001)). As such, the Court will analyze these claims under the same lens.

To state a claim for defamation, New York law requires that a plaintiff allege: "(a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se." *Greenberg v. Spitzer*, 62 N.Y.S.3d 372, 383 (App. Div. 2d Dep't 2017) (citing *Rosner v. Amazon.com*, 18 N.Y.S.3d 155, 157 (App. Div. 2d Dep't 2015)); *see Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1st Dep't 1999) (citing Restatement of Torts, Second § 558) (same); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) ("Under New York law, a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.")

A court must determine whether a plaintiff has made the requisite showing that a statement is false because "only 'facts' are capable of being proven false, [thus] it follows that

only statements alleging facts can properly be the subject of a defamation action." *Center for Medical Progress v. Planned Parenthood Federation of America*, 551 F. Supp. 3d 320, 326 (S.D.N.Y. 2021) (quoting *Rosner*, 18 N.Y.S.3d at 157). Special harm typically refers to something "having economic or pecuniary value" flowing from the injury caused by the defamation. *See Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001) (quoting *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992)). Further, "[f]our types of statements qualify as slander per se: (1) accusations of a serious crime, (2) statements tending to injure another in his or her trade or profession, (3) accusations of having a 'loathsome disease,' or (4) 'imputing unchastity to a woman.'" *Kerik*, 64 F. Supp. 3d at 569 (quoting *Liberman*, 605 N.E.2d at 347).

Plaintiff's Complaint does not include the necessary support for a defamation claim. The only three statements within her Opposition that possibly relate to defamation are: (i) that Alexandria Aldana and Shermaine Veville accused Plaintiff of abandoning her shift when in reality Plaintiff was present (ECF No. 32 at p. 2), (ii) that Shermaine Veville "bad mouthed" Plaintiff to Aldana (ECF No. 32 at p. 13), and (iii) Alexendria Aldana took action "to create a bad narrative of [Plaintiff] and degrad[ed] [her] job ethics to make other Charge Nurse[s] and Managers look bad at [Plaintiff]." (ECF No. 32 at p. 4.)

In *Dieujuste v. Sin*, this District granted a motion to dismiss for failure to state a defamation claim pled by pro se plaintiff under similar circumstances. 731 F. Supp. 3d 440, 453 (E.D.N.Y. 2024). There, pro se plaintiff stated in his complaint that defendants "committed the acts of . . . slander or libel." *Id.* (citing Compl. ¶ 24) (alteration in original). In rejecting this conclusory assertion, the court found that pro se plaintiff not only failed to identify which statements were allegedly defamatory, but also neglected to "allege that *any* statement made by

*any* of the [d]efendants [were] materially false or that [p]laintiff ha[d] been financially or reputationally harmed by this purported false statement." *Id.* (emphasis in original).

Similarly, here, pro se Plaintiff never expanded upon the conclusory allegation in her Complaint by pointing to slanderous statements nor does she connect how the alleged defamation resulted in specified harm to her. Though Plaintiff does contend in her Complaint that she no longer has medical benefits and has difficulty maintaining future employment, she does not connect this harm to be resulting from any defamatory statements—rather she posits that this harm resulted "after being wrongfully terminated." (ECF No. 1 at p. 6.) Accordingly, Plaintiff's claim for defamation and slander is dismissed for failure to state a claim.

vi. <u><em>Employment Harassment</em></u>

Plaintiff advances a claim for "employment harassment" (ECF No. 1 at p. 4), yet this is not a standalone cause of action under New York law. *See Garza v. Nunz Realty, LLC*, 187 A.D.3d 467, 467 (1st Dep't 2020) ("New York does not recognize a common-law cause of action for harassment.") (citation omitted); *see also Pandozy v. Tobey*, 335 Fed. App'x 89, 91 (2d Cir. 2009) (affirming dismissal of pro se plaintiff's causes of action for, *inter alia*, "harassment" because "New York law does not recognize a claim for civil harassment"); *Hill v. Kaleida Health*, No. 07-CV-668S, 2009 WL 3672066, at *9 (W.D.N.Y. Oct. 30, 2009) ("Neither the NYHRL, nor Title VII allow a plaintiff to bring a claim for 'harassment.'"). Accordingly, Plaintiff's claim for "employment harassment" is dismissed under Rule 12(b)(6).

## <u>CONCLUSION</u>

For these reasons, Defendants' motion to dismiss (ECF No. 29) Plaintiff's Complaint is

**GRANTED** for failure to exhaust administrative remedies and failure to state a claim.  The

Clerk of the Court is directed to close out the case.

Dated: Central Islip, New York
          August 14, 2025

**S O   O R D E R E D:**

*/s/ James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
